## Livingood Estate

*Thomas K. Leidy*, for accountant.

*Stevens & Lee, Snyder, Balmer & Kershner, Body, Muth, Rhoda & Stoudt, Frederick J. Bertolet* and *Paul H. Price*, for exceptants.

MARX, P. J., November 18, 1950. — This matter arises on exceptions to our adjudications and decreed distribution of July 22, 1950, on three accounts of Berks County Trust Company (309, 310 and 311 of 1950), trustee under items 7, 8 and 9 of the will of Catharine A. Livingood (Livengood), deceased. Testatrix died on September 27, 1905. Her will, dated March 29, 1904, and a codicil, dated January 12, 1905, were duly probated and letters testamentary were issued to the executors named.

The trusts under inquiry arose upon items 7, 8 and 9 of the will, which reads as follows: . . .

"9th. After the death of both my brother and my said nephew, I give, devise and bequeath all of said real estate unto the child or children of my said Nephew, James Hill, their heirs and assigns, forever. In the event of my said nephew not leaving a child or children or the issue of any child or children, then and in such event I order all of said real estate to be sold and the proceeds to be equally divided between my first and second cousins living at the time of the death of the survivor of either my said brother or my said nephew."

Testatrix died on September 27, 1905; her brother, John Hill, died on February 1, 1917; Leah Louser died on December 13, 1930, and James M. Hill, nephew of testatrix, died on February 22, 1950. James M. Hill died unmarried and without child, children or issue.

The trusts having terminated, the aforesaid three accounts were submitted for audit and were duly adjudicated. . . .

The aggregate of the principal balances, for distribution to those entitled in remainder, $29,983.58, was awarded, in equal shares, per capita, to Mayme Hain White, the only living first cousin, and seven living second cousins of testatrix. Exceptions to the distribution were filed by Mayme Hain White, first cousin, claiming a right to one half of the fund, and by first cousins, once, twice or thrice removed, charging error in the omission of them from participation.

We construed the testamentary gift in remainder to be a gift to a class composed of first and second cousins of testatrix, the members of the class taking per capita.

The exceptions in behalf of Mayme Hain White, the only first cousin of testatrix, charge error in that construction. Specifically, they charge that the exist-

ence of the word "between" was entirely disregarded, or that the word was given the meaning of "among".

The Supreme Court of Pennsylvania, by Justice Maxey, in the case of Bayard's Estate, 340 Pa. 488, 494, said:

"Appellees contend that the proper construction of this will requires a distribution per capita despite the use of the word 'between' in paragraph four.

"It must be conceded that the preposition 'between' applies in its literal sense to only two objects while 'among' always applies to more than two objects. Webster's International Dictionary says of this preposition 'between': 'When (it is ) used of more than two objects, it brings them severally and individually into the relation expressed; as a treaty between three powers; the three survivors had but one pair of shoes between them.' This correct usage of 'between' even when there are more than two objects who are to be brought 'severally and individually into the relation expressed,' has perhaps given rise to the widespread use of this preposition 'between' when more than two objects are to be affected. It is certain that in ordinary speech this preposition is frequently used when strictly correct speech calls for the use of the preposition 'among.' In Ghriskey's Est., 248 Pa. 90, 93 A. 824, this court, speaking through Justice Stewart, said of the preposition 'between' that 'sometimes, more or less frequently, it is used interchangeably with the word "among" which, as properly used, refers to a greater number than two.' In that case where a testatrix bequeathed her residuary estate 'to be divided equally between my husband and our children, the children's money to be held in trust until they are 21 years respectively,' and was survived by her husband and three children this court construed the will as dividing the gift equally between two classes, one of which consisted of the husband, and the other, of the children. In that

case both the court below and this court held that the will itself contained a suggestion of division by class, i.e., that it was reasonable to believe that the testatrix would be inclined to give one-half of the remainder of her estate to her husband and the other half to her children, and that therefore the preposition 'between' should be given its 'precise literal meaning'. In other cases also this court has interpreted the preposition 'between' as relating to only two legatees or classes of legatees, when there were two distinct classes as related to the testator. We have also judicially recognized that the use of the preposition 'between' does not inflexibly apply to two classes of recipients and thus require a distribution per stirpes.

"In Hick's Est., 134 Pa. 507, 19 A. 705, this court held that under a will which provided that the testator's property should be 'equally divided between' his wife Martha and his daughters, Ida B. and Ella B., such (each) legatee would take one-third, the word 'between' being used as synonymous with the word 'among'. In that case we affirmed Per Curiam the opinion of President Judge Hanna of the Orphans' Court of Philadelphia County, who, before citing several cases in which the use of the preposition 'between' was interpreted as sanctioning a per capita distribution among more than two legatees, said in his opinion: 'It is now contended by the widow that her late husband intended his estate to be divided into two equal shares, she being entitled to one share, and that remaining to be equally divided between his two daughters; and that such was his intention is shown by the use of the preposition "between", which can only be properly construed by giving it its correct and accurate signification; and, as it applies properly only to the case of two parties, two objects, two points, or two classes, we must conclude that testator's meaning was thus to divide his estate between his wife and daugh-

ters, the former taking one share and the latter another share. But we do not think such was his intention. If testator had used the common preposition "among" or "amongst," it is conceded there would be no room for argument. And it needs no illustration to show the frequent and familiar use of the word "between," even by well-educated and otherwise accurate linguists, when "among" is intended.' "

The opinion (Bayard's Est.) cites the decision of the United States Supreme Court, by Justice Holmes, in McIntire v. McIntire, 192 U. S. 116:

" 'Between', if accurately used, imports that not more than two persons or groups are set against each other. . . . The equality of division is an equality between the groups. . . . But the court is of opinion that the general rule of construction must prevail according to which, in the case of a gift to the children of several persons described as standing in a certain relation to the testator, the objects of the gift take per capita and not per stirpes."

In Bayard's Estate, the Supreme Court affirmed the decision of the court below, saying:

"The five recipients of the testatrix's bounty were five nieces, one niece being the daughter of testatrix's sister and four being the daughters of her brother. In the absence of any text or fact persuasive to the contrary, it is reasonable to infer that the testatrix wished these nieces to *share equally* in the annuity she created in the paragraph under review." Distribution was decreed among the five nieces per capita.

In relation to the decision in Bayard's Estate, the Superior Court, in Moore Estate, 157 Pa. Superior Court 296, at 300, said:

". . . 'between' was interpreted as meaning 'among' but there the recipients of the testatrix' estate were five nieces. One niece was the daughter of her sister

and four were the daughters of her brother. They all stood in the same relation to the testatrix, all in one class. It was reasonable, therefore, to infer that she wished these nieces to share equally."

The Superior Court further comments upon the decision in the Estate of William Hicks, 134 Pa. 507, 19 Atl. 705, saying:

". . . the will provided that the property of the testator should be 'equally divided between my Wife Martha R. Hicks, and my Daughters Ida Bell and Ella Billmayer if living at my death.' Notwithstanding the word 'between' was used, an equal distribution was ordered to those individually named, which revealed a clear purpose that each one should receive the same portion."

The Superior Court said, relative to the decision in Lenhart's Estate, 344 Pa. 358, 25 A.(2d) 725, where testator in the ninth paragraph of his will gave the remainder, after a life interest, to be divided equally between the children of his brother and the children of his sister: "The use of the word 'between' in the former clause was sufficient to make the division there per stirpes. . .": Moore Estate, supra.

In Rosengarten Estate, 349 Pa. 32, 37, the Supreme Court said:

". . . when a testator makes a gift to a group of individuals of the same class, he is not mentally dividing them stirpitally, and increasing or decreasing their shares depending upon the fecundity of their parent. He is thinking of each member of the class as an *individual*. Thus a gift to grandchildren, nephews, cousins, etc., as a class, connotes an equal share to each individual of the class, i.e.: per capita."

In Loder's Estate, 58 D. & C. 590, the testamentary gift was in this form: ". . . to be 'divided equally between her (Agnes Ianthe Park) children and the chil-

dren of my sister Mary Camitta Dennis.'" The question was whether the distribution should be per capita among all the children, each receiving one twelfth, or per stirpes, the children of Agnes each receiving one eighteenth and the children of Camilla (named in the will as Mary Camitta) each receiving three eighteenths. It was held that the testamentary gift provided for a per capita distribution, especially in view of the fact that elsewhere in the will testator used the word "between" in the sense of "among," and that the children of the sister having the larger family were the favorite objects of his bounty.

It is apparent that, although the prepositions "between" and "among" are, on occasion, used interchangeably, they should not be so used unless some testamentary expression or some extraneous circumstances require. In the case before us testatrix gave to her "first and second cousins," two groups in different relationships to her. The individual members of the two groups were not named; the stirpital relationship was not indicated; they were merely identified as "first" and "second" cousins. In our adjudication we concluded the will contemplated a single group or class, composed of the cousins, first and second, of testatrix. In the light of what we have now concluded, we find error in that interpretation. Testatrix had in mind two groups, one composed of her first cousins, and one composed of her second cousins. She provided for equal division between the groups. Within each group or division the distribution must be per capita. The exceptions of Mayme Hain White are sustained and the decree of distribution is amended accordingly.

The remaining question pertains to the composition of each of the aforesaid groups or classes. Testatrix said "first" cousins and "second" cousins. Distribution was awarded to one full "first cousin" and seven full

"second cousins." Exceptants claim as "first cousins, once removed," "first cousins, twice removed," "first cousins, thrice removed."

In our adjudication we cited McClure's Estate, 72 Pa. Superior Ct. 550, where the appellate court said:

"The only question in issue is the testator's meaning in the use of the term 'second cousin.' In determining this, the whole will must be considered. The context indicates that the testator meant to include not only those who were, strictly speaking, second cousins, but also first cousins once removed, for in the first codicil he refers to his 'second cousin, Edward E. McClure,' who is a first cousin once removed. This is a construction of the words by the testator too strong to be disregarded . . .

"It has been held in Bentham v. Wilson, 15 Ch. Div. 528, that where there is nothing in the context of the will to indicate whom the testator intended to include by the term 'second cousins,' the meaning will be confined to those having the same greatgrandparents; other English authorities . . . hold that where the context reveals the least sign that testator had in mind first cousins once removed, they will be admitted into the class of beneficiaries. . . ."

In the item under consideration, nor in any other portion of the last will and codicil, testatrix gives no intimation or indication whatsoever as to her definition or intent in the use of the words "first and second cousins". Under the authorities cited, we are required to hold, and do hold, that only those answering the designation of first cousins and second cousins shall be included in the distribution. The distribution must, furthermore, be limited to such of those first cousins and second cousins as lived at the time of the death of the last life tenant, James Hill, on February 22, 1950.

In this we find no error.

The remaining exceptions are dismissed. . . .

And now, November 18, 1950, as thus amended, the decree of distribution is now confirmed absolutely.